IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELE CHOATE, individually and )
on behalf of the heirs and estate of )
Deanne Choate, )
 )
                     Plaintiff, )
 )
     v. )     Case No. 16-2118-JWL
 )
CITY OF GARDNER, KANSAS; )
ROBERT HUFF; JUSTIN MOHNY; and )
JEFF BRENEMAN, )
 )
                    Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion for summary judgment (Doc. # 164). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to plaintiff's claim against defendant City based on a failure to provide medical training and plaintiff's claim against the City for punitive damages. The motion is otherwise denied.

### I.    **Background**

On March 26, 2015, various police officers for the City of Gardner, Kansas, including Officers Robert Huff, Justin Mohny, and Jeff Breneman, responded to a 911 call from the Gardner residence shared by decedent Deanne Choate and her boyfriend. The

boyfriend had made the 911 call and told the dispatcher that decedent had been drinking, had fired a gun, and was possibly suicidal. After arriving at the residence, the officers removed the boyfriend from the house and located decedent in bed, apparently naked. After several minutes, in which officers repeatedly asked about decedent's firearm, decedent stated "it's right here," and within a few seconds, Officer Mohny and Officer Huff discharged their weapons, killing decedent.

Plaintiff, the daughter of decedent, brings this action on behalf of decedent's heirs and estate. Plaintiff asserts claims against the City of Gardner and Officers Huff, Mohny, and Breneman pursuant to 42 U.S.C. § 1983, based on alleged violations of the Fourth Amendment. Plaintiff also asserts wrongful death claims under Kansas law.

## II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Fourth Amendment Claims Against Individual Defendants

As the basis for her claims under Section 1983 against the individual defendants, plaintiff alleges that Officers Huff, Mohny, and Breneman used excessive force against decedent in violation of the Fourth Amendment. To overcome the defense of qualified immunity, a plaintiff asserting a claim under Section 1983 must show a violation of a constitutional or statutory right and that the right was clearly established when the alleged violation occurred. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). As the Court noted at the pleading stage in this case, the Tenth Circuit has explained the applicable inquiry for an excessive force claim as follows:

> A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not "objectively reasonable" in light of the facts and circumstances confronting him. This court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances. This reasonableness standard—which is "clearly established" for the purposes of § 1983 actions—implores the court to consider factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. Because the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense is of less value when raised in defense of an excessive force claim. Whether an officer acted reasonably in using deadly force is heavily fact dependent.

*See id.* at 1313-14 (internal quotations and citations omitted). Thus, the Court considers whether a question of fact remains concerning whether the officers acted reasonably in this case in using force against decedent.

Defendants argue that the officers acted reasonably as a matter of law at the time they fired on decedent. Defendants rely on the deposition testimony of Officer Mohny and

4

Officer Huff, each of whom testified that he observed decedent pointing a gun at Officer Mohny. Plaintiff does not argue that it would have been unreasonable (at that particular moment) for the officers to fire on a person pointing a gun at them. Plaintiff argues, however, and the Court agrees, that a question of fact remains concerning whether decedent did point a gun at any of the officers. Defendants argue that the only testimony on that issue comes from Officers Mohny and Huff, but the jury is free to reject such testimony, and other evidence contraverts that testimony. For instance, the video recordings from the body cameras of Officers Mohny, Huff, and Breneman do not show decedent pointing a gun. Moreover, Officer Breneman testified that he did not see any weapon, even though he was only a couple of feet away from decedent when the shooting started, and that as he wrestled briefly with decedent, he felt what he believed to be a weapon *under the covers* of the bed. In addition, after the shooting, decedent's weapon was found under the covers by her knee. Such evidence, viewed in the light most favorable to plaintiff, supports the allegation that decedent did not in fact remove her gun from under the covers (and that the officers may have instead reacted, for instance, to decedent's *statement* about the gun). Finally, the officers' testimony about seeing the gun contains inconsistencies, for example concerning the positioning of decedent's hands and whether she held the gun with one hand or two, and those inconsistencies, viewed in plaintiff's favor, further undermine the officers' testimony about seeing decedent pointing a gun. Because a question of fact remains concerning whether decedent pointed a gun at the officers, the Court cannot conclude as a matter of law that, at the time of the shooting, Officers Mohny and Huff acted reasonably in firing on decedent.

In addition, as the Court discussed at the pleading stage, "[t]he excessive force inquiry includes not only the officers' actions at the moment that the threat is presented, but also may include their actions in the moments leading up to the suspect's threat of force." *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). "The reasonableness of [the officers'] actions depends both on whether the officers were in danger at the precise moment that they used force and on whether [the officers'] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *See Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995) (footnote and citations omitted). A court thus considers "an officer's conduct prior to the suspect's threat of force if the conduct is 'immediately connected' to the suspect's threat of force." *See Allen*, 119 F.3d at 840 (citations omitted).

In the present case, plaintiff alleges that, even if the officers acted reasonably at the exact moment of the shooting, they recklessly created their need to use force and thus acted unreasonably in the totality of the circumstances. Specifically, plaintiff argues that the officers should have taken physical control of decedent while she sat in bed with her empty hands above the covers, before she produced any gun. Defendants argue that the officers were not reckless as a matter of law, but the Court rejects that argument. Plaintiff has submitted the following evidence in support of her argument that defendants should have controlled decedent prior to the shooting: the officers were in the bedroom with decedent for over four minutes before the shooting occurred, during which time they made no attempt to restrain her or to remove her from the bed; the officers had been informed that decedent was intoxicated, was possibly suicidal, and had recently fired a gun; decedent

6

appeared intoxicated or groggy, and she continually failed to respond verbally or physically to repeated questions and commands; Officer Mohny testified that he suspected that decedent had a gun under the covers, and Officer Breneman was worried that she had a gun there; Officer Breneman, who acted as lead officer during the incident and had the most contact with decedent in the bedroom, admitted that he had multiple opportunities to take physical control of decedent; the officers did not merely ask decedent for the location of her gun but actually invited decedent to produce the gun; and the officers declined to restrain decedent not because of any safety concerns, but rather because decedent was apparently naked. Viewed in the light most favorable to plaintiff, this evidence shows that the officers failed to restrain decedent (or at least her hands), even though she had a gun under the covers, despite the fact that her obvious impairment increased the likelihood that she would act erratically, including producing the gun as requested. In addition, the City's policies demanded that the officers control the situation they encountered first and foremost, and plaintiff's expert witnesses opined that the officers should have physically restrained decedent under these circumstances. Based on this evidence, a jury could reasonably find that defendant officers acted recklessly immediately prior to the shooting and that such conduct created any eventual need to use force against decedent.[1]

The Court also rejects defendants' argument that they are entitled to immunity because the law prohibiting their conduct was not clearly established. As noted above, the

---

[1] To be clear, this Court does not find that the officers acted recklessly or unreasonably; rather, the Court merely concludes that a question of fact remains for the jury to decide.

Tenth Circuit has stated that the requirement that officers' use of force be reasonable is clearly established. The Tenth Circuit has also made clear that an officer may be liable if his reckless conduct creates the need to use force.

Finally, defendants argue that Officer Breneman cannot be liable because he did not fire upon decedent. Plaintiff alleges, however, that Officer Breneman's reckless conduct created the need for the other individual defendants to use force, and thus plaintiff has alleged Officer Breneman's personal participation in a constitutional violation. Defendants have not addressed his possible liability in the context of plaintiff's reckless-creation theory (defendants did not address this issue in their reply brief), nor have defendants provided any authority to suggest that an officer must have fired the fateful shot in order to be liable for the use of excessive force. Accordingly, the Court denies each individual defendant's motion for summary judgment on plaintiff's claim under Section 1983.

### IV. Fourth Amendment Claims Against Defendant City of Gardner

#### A. *Encounters With Mentally Ill or Suicidal Persons*

Plaintiff also asserts her Section 1983 claim against defendant City of Gardner. To prevail on such a claim against a city, a plaintiff must show that a municipal policy or custom caused a constitutional deprivation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Under that standard, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *See id.* at 388 (footnote omitted). The Supreme Court elaborated on that rule as follows:

> The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*See id.* at 390 (footnotes omitted). The Tenth Circuit has identified the applicable elements of such a claim:

> To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*See Allen*, 119 F.3d at 841-42 (citations omitted).

In the present case, plaintiff alleges a city policy or custom, including a failure to train, regarding encounters with mentally ill or suicidal persons. Plaintiff relies heavily on the Tenth Circuit's opinion in *Allen*. In that case, the court considered the four elements and concluded that the plaintiff had made a submissible case against the defendant city, sufficient to withstand summary judgment, with respect to her claim based on a failure to train regarding encounters with mentally disturbed persons. *See id.* at 842-45. First, the Court found that a question of fact existed concerning whether the officers used excessive force in violation of the Constitution. *See id.* at 842. Second, the Court cited evidence

9

presented by plaintiff that "it was common for officers to have to deal with mentally ill or emotionally disturbed people and people under the influence of drugs or alcohol," and it further stated that it is not uncommon "for officers to have to deal with persons armed with deadly weapons;" thus, the court concluded that "there was evidence that the use of force arose under circumstances that constituted a usual and recurring situation with which police officers must deal." *See id.* Third, the court concluded that the plaintiff had submitted evidence, including from an expert, that the officers' training had been inadequate, and that such evidence, viewed in the plaintiff's favor, was "sufficient to support an inference that the need for different training was so obvious and the inadequacy so likely to result in violation of constitutional rights that the policymakers of the City could reasonably be said to have been deliberately indifferent to the need." *See id.* at 844 (footnote omitted). Finally, the court concluded that there was sufficient evidence that the inadequate training caused the deprivation in that case. *See id.*

The Court concludes that the same result is warranted in the present case. As discussed above, a question of fact remains concerning whether the officers violated decedent's constitutional right by using excessive force. Plaintiff has submitted evidence that the City receives over 70 suicide call per year on average; thus, plaintiff has submitted evidence that encountering suicidal and other mentally disturbed persons represents a recurring situation with which police officers must deal. Plaintiff has also submitted evidence that the City's training with respect to such persons was inadequate. Indeed, viewed in the light most favorable to plaintiff, the evidence shows that the City's officers effectively were not required to undergo any specialized training in how to handle such

10

persons. Only a small percentage of the City's officers had received Crisis Intervention Training (CIT), and the City did not ensure that each shift included at least one officer so trained. Plaintiff also submitted expert opinion that the City's training was inadequate, and as in *Allen*, it is apparent that inadequate training in handling erratic and armed persons could easily lead to an unreasonable use of force. Finally, there is sufficient evidence of causation here. Plaintiff's experts opined that the officers failed to comply with any proper training when they failed to control decedent, who was obviously impaired, probably armed, and possibly suicidal. Moreover, although Officer Mohny was CIT-certified, it is does not appear that he took any concrete steps (such as reassuring decedent) pursuant to such training.

Defendants rely heavily on the fact that, prior to this shooting, there had never been an instance in which deadly force was used by the City's officers against a suicidal or mentally disturbed person. In *Allen*, however, the Tenth Circuit stressed that "a single violation of federal rights may be a highly predictable consequence of a failure to train officers to handle recurring situations with an obvious potential for such a violation." *See id.* at 845. "A plaintiff can properly rely on the single incident if there is other evidence of inadequate training." *See id.* In this case, plaintiff does not rely solely on the fact of the shooting of decedent, but has submitted additional evidence that the City did not properly train its officers regarding the use of force against suicidal or mentally disturbed persons. Accordingly, because plaintiff has submitted evidence to satisfy each of the required elements, the Court concludes that a jury could reasonably find that the City acted with deliberate indifference. The Court therefore denies the motion for summary judgment on

plaintiff's claim against the City under Section 1983 based on training with respect to suicidal or mentally ill persons.

### B. *Provision of Medical Treatment*

Plaintiff also asserts a claim against the City based on the City's alleged failure to train or supervise its officers regarding the provision of medical treatment following a shooting. Plaintiff has not provided any evidence, however, that any such failure caused any harm in this case. Specifically, both sides' experts agree that nothing could have been done to help decedent after she was shot. Indeed, plaintiff's expert conceded that decedent could not have been saved even if the shooting had occurred in a hospital emergency room.[2] Accordingly, plaintiff has failed to provide any evidence of causation from the alleged failure to train, and the Court therefore grants summary judgment in favor of defendants on this claim.

### C. *Punitive Damages*

Defendants seeks summary judgment on plaintiff's claim for punitive damages against the City. Plaintiff does not dispute that such damages are not available against that defendant. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (municipalities are immune from punitive damages under Section 1983). Instead, plaintiff argues in response only that she may seek such damages from the individual defendants. Accordingly, the Court grants summary judgment in favor of the City on plaintiff's claim for punitive damages.

---

[2] Plaintiff's brief does not address this argument based on a lack of causation.

## V. Wrongful Death Claims

Defendants also seek summary judgment on plaintiff's state-law wrongful death claims. The Court rejects each of defendants' arguments, however, and it therefore denies summary judgment on the state-law claims.

First, defendants argue that the Court should not exercise supplemental jurisdiction over these claims once the federal claims have been dismissed. Because the federal claims survive, however, the Court denies this request.

Second, defendants argue that this claim may not be asserted against Officer Breneman because he did not shoot decedent. Defendants have not cited any authority, however, to suggest that a claim may not nonetheless be maintained in such circumstances. As discussed above, plaintiff has alleged and provided evidence that Officer Breneman's actions caused the other officers' use of force and thus caused the harm to decedent. The Court therefore rejects this argument for summary judgment in favor of Officer Breneman.

Third, defendants argue that they are shielded from liability by Kan. Stat. Ann. § 21-5227(a), which provides that a law enforcement officer is justified in using deadly force if the officer reasonably believes that such force is necessary to defend himself or another from bodily harm. *See id.*; *see also Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1036-37 (1983) (civil liability of officer is coextensive with criminal liability under this statute).[3] Defendants argue that the officers acted reasonably in shooting decedent as a matter of law. As concluded above, however, the reasonableness of defendants' actions remains a

---

[3] In their brief, defendants cite Kan. Stat. Ann. § 21-3215. That statute, however, has been repealed and replaced with Section 21-5227.

13

question of fact for the jury. Therefore, the Court rejects this argument for summary judgment.

Fourth, defendants argue that they are protected from liability by the discretionary function exception to the Kansas Tort Claims Act, Kan. Stat. Ann. § 75-6104(e), which provides that a government entity or its employee shall not be liable with respect to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . ., whether or not the discretion is abused and regardless of the level of discretion involved." *See id.* Defendants concede that this exception "would not shield them from liability to the extent that their use of force was excessive," *see Sevier v. City of Lawrence*, 853 F. Supp. 1360, 1370 (D. Kan. 1994) (citing *Caplinger v. Carter*, 9 Kan. App. 2d 287 (1984)), *appeal dismissed*, 60 F.3d 695 (10th Cir. 1995); but they argue that it does bar plaintiff's wrongful death claim because that claim is based on negligence only. *See id.* (granting summary judgment on wrongful death claim to the extent predicated on negligence).

The Court has previously rejected this argument. *See Clark v. Thomas*, 505 F. Supp. 2d 884, 894 (D. Kan. 2007) (Lungstrum, J.). As preserved in the pretrial order, plaintiff's wrongful death claims are based an allegation of excessive force, and the discretionary function exception does not apply to such a claim. *See id.*; *see also Caplinger*, 9 Kan. App. 2d at 295 (Kansas law imposes a duty not to use unreasonable force, and the intentional use of such force is not a discretionary function). Accordingly, the Court rejects this argument for summary judgment.

Fifth, defendants seek summary judgment on plaintiff's survival claim. With respect to such a claim, "Kansas follows the majority rule that damages are recoverable only for pain and suffering consciously experienced" by the decedent before death. *See Nelson v. Acosta-Corrales*, 2014 WL 1048007, at *3 (D. Kan. Mar. 18, 2014) (citing *Gregory v. Carey*, 246 Kan. 504, 509 (1990)). In this case, at least one officer heard moaning by decedent after she was shot, and plaintiff's expert testified in his deposition that decedent did experience conscious pain and suffering prior to death. Defendants argue that such evidence is not sufficient because the expert did not testify that decedent was responding to particular stimuli. Defendants rely on *Nelson*, in which the court, after reviewing Kansas law, concluded that evidence of moaning was not sufficient by itself without evidence that the moaning was in response to stimuli. *See id.* In this case, however, plaintiff does not rely solely on evidence of moaning; she has also provided evidence from an expert who testified unequivocally that decedent did experience conscious pain and suffering. That evidence is sufficient to create a question of fact for the jury on this point, and the Court therefore denies the motion for summary judgment on the survival claim.[4]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 164) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiff's claim against defendant City based on a failure

---

[4] Defendants appear to question the basis for this opinion by plaintiff's expert, but they have not filed a motion to exclude that opinion under *Daubert*.

to provide medical training and plaintiff's claim against the City for punitive damages.  The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 12th day of July, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge
