IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELE CHOATE, individually and )
on behalf of the heirs and estate of )
Deanne Choate, )
  )
           Plaintiff, )
  )
   v. ) Case No. 16-2118-JWL
  )
CITY OF GARDNER, KANSAS; )
ROBERT HUFF; JUSTIN MOHNY; and )
JEFF BRENEMAN, )
  )
          Defendants. )
  )
_____)

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on the parties' motions to exclude expert testimony. As more fully set forth below, the Court rules as follows. Plaintiff's motion to exclude testimony by Charles Huth (Doc. # 204) is **granted in part and denied in part**, as set forth herein. Plaintiff's motion to exclude testimony by Jason Latham (Doc. # 206) is **granted**. Plaintiff's motion to exclude testimony by Brewster Rolland-Keith (Doc. # 202) is **granted**. Defendants' motion to exclude testimony by various experts (Doc. # 208) is **granted in part and denied in part**, as set forth herein.[1]

---

[1] The Court does not believe that oral argument or an evidentiary hearing is necessary to resolve any of these motions, and thus it denies any request for a hearing.

## I.     Background

On March 26, 2015, various police officers for the City of Gardner, Kansas, including Officers Robert Huff, Justin Mohny, and Jeff Breneman, responded to a 911 call from the Gardner residence shared by decedent Deanne Choate and her boyfriend. The boyfriend had made the 911 call and had told the dispatcher that decedent had been drinking, had fired a gun, and was possibly suicidal. After arriving at the residence, the officers removed the boyfriend from the house and located decedent in bed, apparently naked. After several minutes, in which officers repeatedly asked about decedent's firearm, Officer Mohny and Officer Huff discharged their weapons, killing decedent.

Plaintiff, the daughter of decedent, brings this action on behalf of decedent's heirs and estate. Remaining in this case are plaintiff's claims against the City of Gardner and Officers Huff and Mohny pursuant to 42 U.S.C. § 1983, based on alleged violations of the Fourth Amendment; and plaintiff's wrongful death claims against all defendants under Kansas law.

## II.     Governing Standards

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Thus, the proffered expert testimony must assist the trier of fact. If that threshold is met, the Court undertakes an additional two-part analysis to determine whether an expert's opinions are admissible: first, the Court must determine whether the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes. The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See Kumho Tire*, 536 U.S. at 152.

### III.   **Defendants' Motion to Exclude**

#### A.   *Vega as Rebuttal Witness*

Defendants seek to exclude all expert testimony by Henry Vega, a forensic engineer specializing in video and audio analysis and accident reconstruction. On January 31, 2018, plaintiff designated Mr. Vega as a rebuttal expert witness and served accompanying disclosures, including his expert report. Defendants now argue that Mr. Vega's opinions

go beyond mere rebuttal, and that his opinions should have been disclosed at the time of plaintiff's initial expert disclosures.

The Court agrees that Mr. Vega's report is not limited to rebuttal of defendants' expert. Nevertheless, the Court denies the motion to strike Mr. Vega's testimony on this basis. Defendants have not identified any prejudice from the late disclosure concerning Mr. Vega. Defendants deposed Mr. Vega long ago, and they have not argued that they need additional expert testimony of their own to rebut Mr. Vega's opinions. Moreover, any such prejudice could easily have been cured in the two years that have passed since this disclosure. Indeed, defendants should have raised any such issue at the time of the disclosure, when any potential prejudice could have been timely addressed.

B. *Observations from Recordings*

Defendants next seek to exclude any opinions or testimony from plaintiff's experts in which the expert merely observes or comments on or draws inferences from images taken from the officers' body camera recordings. In fact, each side has moved to exclude such testimony by the opposing experts, and the parties are in agreement that no such expert testimony should be permitted. The Court agrees that such testimony would not be helpful to the jury, as it has not been shown that any expert has special expertise in viewing and interpreting such pictures or has applied any particular methodology in determining what is depicted. The jury can decide what the videos and photographs show as easily as the experts can. *See, e.g.*, *National R.R. Passenger Corp. v. Cimarron Crossing Feeders*, 2018 WL 5962876, at *30 n.10 (D. Kan. Nov. 14, 2018) (subjective impression of what is seen in a video, if unsupported by scientific data or testing, is not helpful to the jury). Thus, the

4

experts in this case may not offer testimony concerning whether a video or photograph shows that decedent did or did not have an object in her hand at the time of or before the shooting.

The same is true for any conclusions drawn solely from the experts' viewing of the recorded images. Thus, an expert may not draw any conclusion based on the fact that the images show or do not show that decedent was holding a firearm. An expert could offer an opinion based on the assumption that decedent did or did not hold or point a gun (with that assumption to be proven by the videos or other testimony), but the expert may not testify that the videos offer evidence or proof concerning the presence or absence of the gun. Similarly, no expert may comment on the existence or lack of evidence contained in the video recordings. Nor may an expert make arguments from that evidence, such as the argument that decedent could not have brandished the gun in light of the fact that the gun was found under the covers by her knee. Such arguments may only be made by counsel, and the jury can consider those arguments without the help of experts that have not applied any expertise or methodology to the question.

On that basis, the Court considers the particular testimony offered by plaintiff's experts. Mr. Vega may not testify that decedent was responding to the officers' commands when she was shot, as that opinion is derived solely from the expert's observations from the videos of decedent's actions. For the same reason, he may not testify that decedent's hand was empty. On the other hand, Mr. Vega may offer his opinions concerning the timing and sequence of the events, the locations of the individuals, and the trajectories of

the bullets, as he has applied scientific methodologies to reach those conclusions, which would be helpful to the jury.

Hugh Mills, a law enforcement expert, will not be permitted to offer the following opinions from his report, which are based solely on his observations of the recordings: that he did not see any action by decedent in pointing the gun; that the videos do not support Officer Mohny's story; and that he did not see on the video that decedent produced a gun in a threatening manner. With respect to the last opinion, plaintiff argues that whether an action is threatening falls within Mr. Mills's expertise. The report does not contain any opinion, however, concerning whether a particular action would or would not be considered threatening by an officer; rather, Mr. Mills merely states that he did not see the gun produced in a threatening manner as alleged by a defendant, and thus the opinion is no more than a comment on what may be seen in the videos. The Court also excludes the opinion from Mr. Mills's report, based solely on the recordings, that the gun was under the covers the entire time.

The Court also excludes opinions from paragraph D.5 of the report by Ken Katsaris, another law enforcement expert. Mr. Katsaris will not be permitted to testify that a review of the recordings do not show a gun in decedent's hand, or that the gun was still under the sheets by decedent's knee at the time of the shooting. Nor may he testify that it would be impossible for the gun to be found there if decedent had had the gun in her hand, as he has merely drawn a conclusion from the recordings without offering an opinion based on his expertise or specialized knowledge. In fact, Mr. Katsaris may not comment at all on where

the gun was found, as such evidence is not tied to an expert opinion that he will be permitted to offer.

### C. *Law Enforcement Procedures and Practices*

Defendants seek to exclude opinions by Messrs. Katsaris and Mills that defendants' conduct violated proper or customary law enforcement procedures and practices. Defendants argue that such testimony is not relevant to the particular claims at issue in this case.

With respect to plaintiff's state-law claims, defendants argue that the claim is essentially one of battery, not negligence, and that therefore violations of procedures or practices are irrelevant to the reasonableness standard that would govern a battery claim based on excessive force. The Court rejects this argument. Plaintiff's asserted claim of negligence is not foreclosed by the case on which defendants rely, *Baska v. Scherzer*, 283 Kan. 750 (2007), in which the court determined which tort's limitations period should apply to particular factual allegations. In *Baska*, only intentional conduct was at issue. *See id.* In this case, however, plaintiff has alleged that defendants were negligent with respect to unintentional conduct separate from the actual shooting, such as the failure to control decedent. Thus, the Court cannot rule as a matter of law that the negligence standard cannot apply here. Defendants have not offered any authority or argument that police procedures and practices would not be relevant to a claim of negligence, and therefore the Court denies the motion to exclude such testimony.

Such testimony may also be relevant to plaintiff's federal claims. Defendants argue that a violation of a procedure or practice does not necessarily establish that the force used

was unreasonable (the applicable standard), and that such evidence is therefore irrelevant and unduly prejudicial. Defendants rely on *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir. 2005), and similar cases, in which the Tenth Circuit upheld the exclusion of such testimony in the trial of a federal excessive-force claim. The present case, however, also involves a claim against the City, and the relevance of such violations to such a claim was not addressed in those cases. *See, e.g.*, *id.* at 1221-22. In *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730 (10th Cir. 1993), such a claim of municipal liability was at issue, and the Tenth Circuit noted that "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement." *See id.* at 742. The Court agrees with the reasoning of the court in *Martinez v. Salazar*, 2016 WL 9488862 (D.N.M. Dec. 14, 2016), in which the court distinguished *Zuchel* and *Marquez* on this basis. Thus, this testimony is relevant and is not subject to exclusion on this basis. Moreover, the Court rejects defendants' argument that this testimony is not sufficiently supported by the witnesses' experience and expertise.

Defendants also argue that because the Tenth Circuit ruled that Officer Breneman did not violate clearly established law in failing to restrain decedent, the City cannot be liable as a matter of law for any deliberate indifference to decedent's rights. This argument is more in the nature of an argument supporting a motion for judgment as a matter of law on a particular claim against the City, and thus the Court will not consider it in this context. The Court also declines to address the issue because it was raised for the first time in defendants' reply brief. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (citing *Minshall v. McGraw Hill Broadcasting*

*Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Accordingly, defendants' motion to exclude this testimony concerning law enforcement procedures and practices is denied.

### D.    *Opinions Regarding Belief or Intent or Knowledge*

The Court agrees with defendants generally that experts should not be permitted to testify that an individual had or did not have a particular belief or knowledge or intent, as such commentary would fall outside the witness's expertise. Thus, Mr. Katsaris may not testify that anyone acted "recklessly", as that term provides a legal standard for intent. He may opine that certain conduct violated standards, but he may not call that conduct reckless, which would improperly suggest the actor's state of mind.

The Court will not permit experts to speculate about what another person knew at a particular time. If the expert is merely repeating what the other person has already stated about his own knowledge (as plaintiff argues), then the expert may do so only for the purpose of offering an opinion based on that version of events (i.e., if it happened as this person states, then this is the opinion); the expert may not simply parrot or attempt to lend credence to the other evidence in the guise of offering expert testimony.

### E.    *Katsaris – Particular Testimony*

Defendants raise a few other issues relating to testimony by Mr. Katsaris.

First, defendants challenge testimony by Mr. Katsaris in his deposition that decedent was "mentally ill" as defined in a particular Kansas statute. Mr. Katsaris did not proffer such an opinion, however, but simply responded to a direct question. Plaintiff concedes that Mr. Katsaris may not offer that opinion at trial, although a direct question from defendants, as at the deposition, would open the door to such testimony.

Second, defendants challenge the opinion in Mr. Katsaris's report that the City should not have hired Officer Breneman because of past issues (training performance, lying) at previous law enforcement jobs.  The Court does not agree that this opinion is irrelevant simply because of the Tenth Circuit's ruling that Officer Breneman has qualified immunity here.[2]  The Court does agree, however, that plaintiff has not established the relevance of this opinion.  In the pretrial order, which controls the litigation, plaintiff has not preserved any claim, whether for negligence or for a constitutional violation, based on hiring by the City.  The underlying conduct cited by Mr. Katsaris would only be relevant if it relates to a particular claim, such as a claim involving training by the City.  Thus, Mr. Katsaris might have been permitted to opine that the City should have given Officer Breneman more training because of his past issue with training – but Mr. Katsaris offers no such opinion in his report.  Nor has Mr. Katsaris related Mr. Breneman's lying to his training by the City or any other issue relevant to a claim asserted by plaintiff.  Moreover, given this lack of relevance, the Court would exclude any such testimony concerning the lying, which implicates Officer Breneman's credibility, under Fed. R. Evid. 403.  Accordingly, the Court grants the motion to exclude this opinion.

Third, defendants seek to exclude Mr. Katsaris's opinions, stated in his report and at his deposition, that the officers violated law enforcement standards when they moved decedent and failed to treat her after the shooting.  The Court rejects defendants' argument that Mr. Katsaris's description of this conduct is too inflammatory; defendants may address

_____

[2] Contrary to defendants' argument, Officer Breneman is not "out of the case," as he remains a defendant on plaintiff's state-law claim.

the egregiousness of the violation on cross-examination. In addition, the Court cannot conclude that this testimony would not be relevant to plaintiff's claim for damages for pain and suffering prior to her death. Thus, the Court denies the motion to exclude these opinions without prejudice, subject to plaintiff's ability to show at trial that a failure of training or the violation of standards (issues within the witness's expertise) caused pain and suffering.

### F. *Mills – Particular Testimony*

Defendants also seek to exclude particular testimony by Mr. Mills.

First, defendants seek to exclude Mr. Mills's opinion that Officer Breneman chose the wrong weapon (a long rifle) in responding at the scene. In his report, Mr. Mills states that that choice limited the officer's ability to control another person and was inconsistent with the nature of the situation presented. Defendants rely on Mr. Mills's deposition testimony that this choice did not necessarily constitute a violation of decedent's rights, but that it was a tactical decision with which he disagreed. Counsel introduced the concept of a rights violation in the question, however, and thus Mr. Mills did not volunteer an improper opinion on the ultimate legal question. The issue for purposes of exclusion is whether Mr. Mills ties this conduct to a relevant standard or whether he was merely stating a personal opinion. Viewing the report as a whole, the Court concludes that Mr. Mills properly ties this opinion to law enforcement and training standards, including the One Officer Patrol Policy.[3] If at trial, Mr. Mills states that this is merely his opinion, untethered

---

[3] For this reason, the Court also denies defendants' motion to exclude expert testimony by Mr. Mills concerning a violation of the One Officer Patrol policy.

to a relevant standard or policy, then the opinion would be subject to exclusion. The motion to exclude this testimony at this stage, however, is denied.

Second, defendants seek to exclude any opinion by Mr. Mills involving policies relating to dealing with a mentally ill person. In summary fashion, defendants cite his deposition answer in which he stated that he would not assume decedent was mentally ill based solely on certain descriptors from police dispatch that day. That answer does not make Mr. Mills' opinions concerning those policies irrelevant, however, nor does it undermine his opinion that the officers did not follow the relevant procedures. For instance, Mr. Mills testified that he would have wanted to gather additional information at the scene before making that determination. Defendants also seem to argue that Mr. Mills should not be permitted to testify that decedent was in fact mentally ill, but it does not appear that Mr. Mills has offered such an opinion. The Court denies this request for exclusion.

Third, defendants challenge Mr. Mills's deposition testimony that he would consider the totality of the circumstances and that no one act by itself violated decedent's rights. The basis for exclusion urged by defendants is unclear, however, and the Court finds none. Mr. Mills did not improperly offer an opinion incorporating a legal standard, as he was responding to a direct question about the violation of decedent's rights; he did not offer his own opinion that there was a constitutional violation here.

Fourth, defendants seek to exclude Mr. Mills's opinions concerning the hiring and training of Officer Breneman and Officer Mohny. The Court agrees that the opinion about Officer Breneman's hiring should be excluded for the same reasons set forth above. Mr.

Mills merely notes that the officer failed to complete a program; thus, like Mr. Katsaris, Mr. Mills does not tie that failure to the City's own training of the officer. Nor has plaintiff explained how Officer Breneman's prior falsification is related to a claim here. Regarding Officer Mohny's hiring, Mr. Mills states that there "may well be issues" with the officer's departure from his last job, which would be a "consideration" in the issue of negligent hiring. Again, however, no negligent hiring claim has been preserved; and Mr. Mills, by his speculation about possible issues, has not offered an expert opinion tied to any standard relevant to a claim in the case. The motion is granted with respect to Mr. Mills's testimony about both officers' hiring.

Mr. Mills's testimony regarding training would be relevant to plaintiff's claims, and as noted above, the Court cannot say that the opinions in his report are not tied to applicable standards. Thus, the Court denies the motion to exclude the testimony about training.

Fifth, defendants object to Mr. Mills's statements about the officers' failure to use less lethal options, arguing that Mr. Mills has merely commented on the evidence without offering an opinion. The Court disagrees, as the statements relate to the opinions concerning defendants' use of force and the manner in which they handled the situation. Such testimony about the choice of weapons could be helpful to jurors who would not necessarily be familiar with those options and procedures.

Sixth, defendants seek to exclude certain opinions stated in Mr. Mills's supplemental report. The Court rejects defendants' argument relating to the opinion about the Use of Force policy; Mr. Mills has not improperly stated legal conclusions about recklessness or excessive force, but rather has properly based his opinion on the policy.

The Court does exclude the third "opinion" in the supplemental report. Mr. Mills does not state his own opinion there, but merely repeats the police chief's statement than an officer violated a policy on wearable recording devices. Moreover, plaintiff has not shown that any such testimony is relevant to the claims in the case.

The Court also excludes Mr. Mills's supplemental opinion that officers violated a procedure by talking about the incident afterwards. Plaintiff has not shown how that testimony would be relevant to any claim.[4]

G.     *Waeckerle*

Finally, defendants argue that Dr. Joseph Waeckerle, plaintiff's rebuttal expert, "should be prohibited from referring to or implying that [decedent] may have continued to retain the ability to cognitively process for a specific period of time, such as 5 to 10 minutes, or potentially 20 minutes." The Court denies the motion to exclude such testimony, as Dr. Waeckerle offered no such opinion. He opined, to a reasonable degree of medical certainty, that decedent's cognitive processes did not cease immediately after she was shot, although he could not determine how long those processes lasted. In his deposition, he testified that a person could be conscious for periods ranging from six seconds to 20 minutes, but he did not testify that decedent was conscious for any particular period of time. Similar testimony at trial would not be subject to exclusion. If this witness alters those opinions at trial, defendants may move to strike at that time.

_____

[4] It is not enough for plaintiff simply to state that the testimony is relevant without any explanation.

## IV.    Plaintiff's Motion to Exclude – Huth

### A.    *Opinion 1*

Plaintiff seeks to exclude testimony by Charles Huth, defendants' law enforcement expert, who offers four primary opinions in his report.  In his first opinion, Mr. Huth states that the officers' "initial response to the scene and entry into the residence was consistent with contemporary police training, tactics, and customs given the context of the call for service."  Relying on *United States v. Rodella*, 2014 WL 6634310 (D.N.M. Nov. 19, 2014), plaintiff argues that Mr. Huth is not qualified to offer opinions on national standards.  The Court rejects that argument.  The cited case was decided based on the witness's particular experience.  *See id.* at *18-21.  In this case, the Court concludes in its discretion that Mr. Huth is sufficiently qualified to offer these opinions by his experience and training, including his national certifications.  Any issues relating to his qualifications go to the weight of his testimony, not to its admissibility.

The Court also rejects plaintiff's argument that Mr. Huth proved unable to explain the applicable standards in his deposition.  In the cited testimony, Mr. Huth was merely explaining what he meant by "contemporary" standards.  Moreover, the Court concludes that Mr. Huth's testimony may be relevant and helpful to the jury.  That is so even if Mr. Huth is not familiar with one officer's particular training – he does not offer any opinion concerning that training, but instead offers expert testimony about standards that may be relevant to plaintiff's claims.

### B.    *Opinion 2*

Mr. Huth sums up the second opinion in his report by stating that "Officer Breneman's attempt to persuade a passive, nude [decedent] to dress herself and exit the bed was understandable given his initial observations." Plaintiff first seeks to exclude this opinion because it is not based on "scientific" knowledge. The applicable rule, however, refers to the expert's "scientific, technical, or other specialized knowledge." *See* Fed. R. Evid. 702(a). Mr. Huth bases this opinion on his specialized knowledge of law enforcement practices.

The Court rejects plaintiff's argument that this testimony would usurp the responsibility of the Court and the jury. Mr. Huth has not offered any legal conclusion, and his opinion is properly confined to law enforcement customs and practices.

The Court does not agree that Mr. Huth's report merely repeats others' testimony. Rather, Mr. Huth has used the testimony to support his particular opinions, and he may testify that if the facts are consistent with the others' testimony, then certain conduct falls within the applicable standard. Of course, he would not be permitted at trial to repeat evidence without using that evidence as a basis for a particular opinion.

Plaintiff objects to the statement in Mr. Huth's report that "there is no evidence that the officers operated in an intentional or reckless manner to provoke [decedent's] violence." As discussed above, the Court generally will not permit an expert witnesses in this case merely to make the argument that particular positions are not supported by evidence. Defendants have not addressed plaintiff's objection to this particular testimony, and thus defendants have not explained how such expert testimony would be proper here.

16

Accordingly, the Court grants plaintiff's motion to exclude this particular statement within this opinion.

Plaintiff also objects to the portion of the report in which Mr. Huth states that had the outcome been different and had decedent not pointed the gun, then Officer Breneman's conduct would likely have been lauded. Mr. Huth then states that the audio and video evidence "captured nothing" to indicate an assault by decedent before she actually pointed the gun. Again, defendants have not addressed plaintiff's argument about the particular statements, and thus have not adequately defended any such expert opinion. The Court therefore will exclude such testimony consisting of mere speculation about possible reactions to an event that did not occur. Mr. Huth's testimony about the lack of evidence of provocation by decedent is also excluded, as the jury can view the recordings and determine for itself what decedent did or did not do. The motion to exclude Mr. Huth's second opinion is thus granted in part and denied in part.

### C.     *Opinion 3*

Mr. Huth's third opinion is that the officers' use of deadly force was consistent with contemporary police practices and training. The Court rejects plaintiff's argumens based on Mr. Huth's qualifications, for the same reasons stated above. The Court also rejects plaintiff's argument that Mr. Huth has improperly offered an opinion on the ultimate legal question. Mr. Huth has sufficiently tied his opinion to police standards. He does not improperly opine that decedent pointed a gun; rather, his testimony is essentially that if she did point a gun, then the officers' response fell within police practices. The Court agrees with plaintiff that Mr. Huth may not speculate about what an officer knew or did not know,

although he may rely on that officer's own testimony if it provides a basis for Mr. Huth's expert opinion.

Defendants have not responded to plaintiff's objection to Mr. Huth's deposition testimony that officers were "emotionally overwhelmed," and the Court will therefore exclude any such speculative testimony beyond Mr. Huth's expertise.

Plaintiff also objects to Mr. Huth's statement in his report that it is "likely" that using force on decedent "could have caused her to resort to violence more quickly." Again, defendants have not attempted to show how such speculation is tied to a permissible opinion stated by Mr. Huth. The motion to exclude Mr. Huth's third opinion is thus granted in part and denied in part.

D.    *Opinion 4*

Mr. Huth's fourth opinion is that the report by Jason Latham, another expert, provides evidence that decedent was armed with a handgun at the time of her shooting. The Court excludes that opinion. As previously discussed, the parties and the Court are in agreement that the experts may not comment on what the video recordings show, as the jury can make its own determination. As discussed below, Mr. Latham's report is based on his own conclusion about what is shown in the recorded images, and any such opinion is excluded. Thus, Mr. Huth may not cite Mr. Latham's report as evidence of what decedent did at the time of the shooting. Nor may Mr. Huth offer his own conclusions about what the videos show.

For the most part, Mr. Huth uses this section of his report to rebut Mr. Katsaris's conclusions about what the videos reveal, but the Court has excluded any such opinions by

Mr. Katsaris. Just as Mr. Katsaris will not be permitted to draw conclusions from the eventual location of the gun, nor will Mr. Huth be permitted to argue that that location is irrelevant. As part of that argument, Mr. Huth opines that a victim can engage in voluntary action for 10 to 15 seconds after the heart stops and blood flow to the brain ceases. In his deposition, Mr. Huth stated that this opinion comes not from his medical knowledge but from his firearms training and experience. Mr. Huth has not tied any opinion concerning the possibility for voluntary action to this particular victim, however; he is merely stating what is possible in a general sense. Any such testimony that does not address this particular victim, with particular gunshot wounds, is too speculative, especially coming from a non-medical expert. Moreover, given the lack of this expert's medical expertise and the failure to relate the testimony to decedent's actual condition, the Court would exclude the testimony under Rule 403 because the danger of unfair prejudice and confusion would substantially outweigh the probative value. Plaintiff's motion to exclude this opinion is granted.

### V.    <u>Plaintiff's Motion to Exclude – Latham</u>

Plaintiff seeks to exclude expert testimony by Jason Latham. Mr. Latham analyzed the recordings from the officers' body cameras and opined, in fairly summary fashion, that the images reveal that there was an object in decedent's hand when she raised her hand just before the shooting, although Mr. Latham could not identify the object. As his basis, Mr. Latham states that an object of darker contrast is visible in her hand and that the darker

area and the hand move in a consistent fashion. Mr. Latham also testified that the officers'

commands at the time were consistent with the presence of an object in the hand.

Defendants agree that such expert testimony would not be helpful and would

improperly invade the province of the jury, for the reasons discussed above. Thus,

defendants, who made the same argument with respect to plaintiff's experts, do not oppose

exclusion of Mr. Latham's opinions. Nor do defendants oppose exclusion of Mr. Latham's

reliance on the officers' commands. Accordingly, the Court grants the motion, and it will

exclude Mr. Latham's opinions based on observation of the videos, including whether the

officers' conduct was consistent with the presence of an object in decedent's hand.[5]


## VI.    Plaintiff's Motion to Exclude – Rolland-Keith

Plaintiff moves to exclude any expert testimony by Brewster Rolland-Keith, an

expert designated by defendants. Mr. Rolland-Keith and Mr. Latham work at the same

firm, and defendants state that Mr. Rolland-Keith only peer-reviewed Mr. Latham's report,

and that Mr. Rolland-Keith would testify only if Mr. Latham becomes unavailable. Mr.

Rolland-Keith testified in his deposition that he did not review or analyze Mr. Latham's

work, but merely checked to make sure that certain steps were followed.

Mr. Rolland-Keith did not offer a report disclosed to plaintiff, however, an omission

that defendants do not dispute. Defendants have not offered any reason why Mr. Rolland-

---

[5] As defendants note, plaintiff has not sought to exclude Mr. Latham's enhanced photographs or testimony about their creation, although the parties would be free to stipulate regarding any issue relating to foundation.

Keith should be allowed to testify without such a report. Nor have defendants addressed plaintiff's argument that Mr. Rolland-Keith did not perform any analysis and has no opinions of his own to offer. Moreover, the Court has excluded all substantive opinions by Mr. Latham. For these reasons, Mr. Rolland-Keith will not be permitted to testify as an expert, and the Court grants plaintiff's motion for exclusion.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion to exclude testimony by Charles Huth (Doc. # 204) is hereby **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion to exclude testimony by Jason Latham (Doc. # 206) is hereby **granted**.

IT IS FURTHER ORDERED THAT plaintiff's motion to exclude testimony by Brewster Rolland-Keith (Doc. # 202) is hereby **granted**.

IT IS FURTHER ORDERED THAT defendants' motion to exclude testimony by various experts (Doc. # 208) is hereby **granted in part and denied in part**, as set forth herein.

IT IS SO ORDERED.

Dated this 18th day of February, 2020, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge